IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RANDY L. BLACKMORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 09-0558-CV-W-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION REVERSING COMMISSIONER'S FINAL DECISION AND REMANDING WITH INSTRUCTIONS TO CALCULATE AND AWARD BENEFITS

Plaintiff filed applications for benefits under Title II and Title XVI in November 2004, alleging a disability onset date of September 20, 2004. The application was denied by an ALJ on April 16, 2007. Plaintiff sought review from the Appeals Council and also filed a second application for benefits. The Appeals Council declined to review the case, and Plaintiff sought judicial review. Meanwhile, his second application for benefits was granted and Plaintiff was awarded benefits effective April 17, 2007. The Commissioner asked the Court to reverse and remand the decision on Plaintiff's initial applications, and this was done on March 24, 2008.

On remand, the Appeals Council reopened the decision and ordered that another hearing be held. A hearing was held, and the ensuing partially favorable decision determined Plaintiff was disabled as of November 7, 2006. The ALJ found this to be the correct onset date because this is when Plaintiff's heart condition worsened. R. at 677. Plaintiff again seeks judicial review, contending his disability began before that date due to a combination of back pain, heart problems, and depression.

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some

evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984). Having reviewed the Record, the Court concludes the Commissioner's final decision is not supported by substantial evidence in the Record as a whole. To the contrary, substantial evidence demonstrates Plaintiff was disabled on and after his alleged onset date.

The Court agrees that Plaintiff's depression and anxiety were not disabling, and also agrees that Plaintiff's heart condition was not disabling until November 7, 2006. The principal issue is Plaintiff's back pain. While Plaintiff alleges his onset date is September 20, 2004, his back problems arose following a car accident in May 2003. Dr. Ramon Nichols examined Plaintiff and diagnosed him as suffering from a concussion, a cervical strain, poorly-controlled hypertension, and degenerative disc disease in both his cervical and lumbar spine. Plaintiff was advised not to work until further notice, participate in physical therapy, and return in one week. R. at 180-81. Plaintiff continued to report pain at the next appointment, and an MRI revealed decreased disk height at C3-4 and C4-5, disc protrusion at C5-6, disk bulges at C3-4, C4-5, and T11-12, and dessication (an early sign of degeneration) at L4-5 and L5-S1. Tenderness in the cervical and lower lumbar regions was noted, as was a diminished range of motion. R. at 183. The following week Plaintiff reported continued pain and numbness. His range of motion had improved, but tenderness was still present. R. at 184.

In early January 2004 Plaintiff sought treatment at Truman Medical Center. He received medication and was instructed to follow up with an orthopedist at TMC. R. at 222-23 . He kept that appointment and saw Dr. Clinton Pickett on February 10. Dr. Pickett's notes reflect that straight leg raising was positive (confirming the presence of

2

back problems), that pain was apparent, and Plaintiff's reflexes were diminished. Dr. Pickett refrained from ordering an MRI or x-ray of Plaintiff's back, preferring to wait and review those performed by Dr. Nichols. R. at 219. Obtaining the MRIs proved difficult, so Plaintiff's first appointment following Dr. Pickett's receipt of them was March 2. Based on the MRIs and tests he performed, Dr. Pickett diagnosed Plaintiff as suffering from lumbar spinal stenosis. Plaintiff could not afford an epidural injection, so Dr. Pickett prescribed a six-day Medrol dose-pack. R. at 209.

On January 25, 2005, Plaintiff went to the pain clinic at St. Joseph Health Center where his records and complaints were reviewed and an appointment to have an epidural injection was scheduled. R. at 283-84. He returned on February 23: the record from this visit indicates Plaintiff already received an epidural injection, but there is no record documenting such a procedure. In any event, an epidural injection was administered at this visit. R. at 282-83. Another epidural was administered on April 26. R. at 280. On May 3, Plaintiff reported continued numbness and burning in his left leg. MRI findings were "really not terribly significant" and Plaintiff was referred for an EMG. R. at 278.[1] The EMG was normal. R. at 335-37. In June, it was determined that lumbar facet blocks had resulted in improvement. R. at 583-85. On July 20, doctors continued treating Plaintiff with Relafen and physical therapy. R. at 581. Plaintiff made persistent complaints to his regular physician (who provided pain medication) and to his therapist and psychiatrist, both of whom indicated Plaintiff's pain was a contributing factor to his depression and anxiety.

On April 11, 2006, Plaintiff saw Dr. Francisco Judilla at the Headache and Pain Center on referral from St. Joseph Health Center. He was assessed with cervical and lumbar radiculaopathy. R. at 538-41. Subsequent MRIs revealed a bulge at C2-3, protrusions at L4-L5, L5-S1, C3-4 and C4-5, and herniation at C5-6. R. at 537. On April 18, Dr. Judilla administered an epidural injection. R. at 533-35. He administered another on June 13. R. at 518-20. At Plaintiff's last visit on July 28, 2006, Dr. Judilla

---

[1]This record also confirms that Plaintiff had received only two epidural injections.

indicated Plaintiff's symptoms in his cervical spine remained uncontrolled. R. at 506-08.

Plaintiff returned to St. Joseph Health Center, and in October 2006 an MRI confirmed the problems in his back that have been identified recently. Significantly, the MRI revealed degenerative disk disease, most notably at C3-4, C4-5, and C5-6, a disk protrusion at C5-6, and stenosis at C4-5 and C5-6. R. at 574-75. The doctor discussed the need for surgery to remedy Plaintiff's condition. R. at 578-79.

In discounting Plaintiff's subjective complaints (relating to both pain and depression), the ALJ noted the results of intellectual functioning tests performed by a psychologist in October 2004 which were deemed unreliable because Plaintiff was not putting forth his full effort and evidence that Plaintiff did not consistently take his antidepressants and had a poor work history.[2] The importance of these findings in the context of Plaintiff's back problems is doubtful at best. The Record reflects that some of the antidepressants prescribed for him caused Plaintiff to be sick, and his prescription was changed several times in an effort to find one that did not cause side effects. Plaintiff cared for his ailing mother for a number of years and returned to work after she passed away in 2001, which explains his period of unemployment.

These factors do not overcome the evidence supporting Plaintiff's claim. Most notably, objective medical testing confirmed the presence of multiple problems in Plaintiff's back that could be expected to cause the degree of pain described. Plaintiff's condition did not improve for over two years, and it was not until October 2006 that surgery was even contemplated. Nothing in the Record indicates Plaintiff did or said anything inconsistent with his claim of severe pain. In fact, nothing in the Record indicates Plaintiff experiences less pain than he described or that he is able to tolerate the pain and perform regular work functions at any level of exertion.

---

[2]There was other evidence indicating Plaintiff's depression and anxiety were improving; while this was properly considered in connection with Plaintiff's claims of severe mental limitations it clearly had no relationship to (and was not considered in connection with) Plaintiff's pain.

4

Substantial evidence in the Record as a whole demonstrates Plaintiff experiences pain with a frequency and severity that precludes him from working at any job that exists in significant numbers in the national economy. The Commissioner's final decision denying benefits is reversed, and the case is remanded with instructions to calculate and award benefits from September 20, 2004, to November 7, 2006.

IT IS SO ORDERED.

DATE: October 13, 2010

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT